O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ERNESTO R., | Case No. 2:20-CV-01494 KES |
| Plaintiff, |  |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, |  |
| Defendant. |  |

**I.**

**BACKGROUND**

Ernesto R. ("Plaintiff") was born in Mexico in 1969.  Administrative Record ("AR") 71, 204.  He immigrated to the United States at age 15 and worked for 11 years as a painter.  AR 71, 458, 715; but see AR 1037 (describing former occupation as "porter").  After completing vocational training, he worked as an auto mechanic at Pep Boys from 2000 to 2015.  AR 70, 234.  He stopped working on April 23, 2015,[1] after an August 2014 industrial accident; he fell off a vehicle and

---

[1] Plaintiff had reported earnings in 2016 from a qualified settlement fund, AR 220, but the ALJ noted that those earnings were not substantial gainful activity, AR 23.

1  experienced pain and swelling of his left ankle.  AR 70, 233, 457.  He filed a

2  workers' compensation claim that eventually settled for $30,000.  AR 70–71.

3       In January 2016, Plaintiff protectively applied for Title II Social Security

4  Disability Insurance Benefits alleging that he became unable to work on April 23,

5  2015, due to multiple conditions including back pain, diabetes, hypertension, and

6  gastroesophageal reflux disease.  AR 21, 106, 204–07, 233.  On August 20, 2018,

7  an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who

8  was represented by counsel, appeared and testified with the assistance of a Spanish

9  interpreter; a vocational expert ("VE") also testified.  AR 65–92.  On September 18,

10  2018, the ALJ issued an unfavorable decision.  AR 21–30.

11       The ALJ found that Plaintiff suffered from the medically determinable

12  impairments of "degenerative disc disease of the cervical and lumbar spine; left

13  ankle sprain; hallux valgus; left shoulder impingement; obesity; and diabetes

14  mellitus with neuropathy."  AR 23.  Despite these impairments, the ALJ found that

15  Plaintiff had a residual functional capacity ("RFC") to perform a reduced range of

16  light work.  AR 24.  Based on this RFC and the VE's testimony, the ALJ found that

17  Plaintiff could no longer work as an auto mechanic, but he could perform the

18  alternative jobs of electronics worker, bench assembler, and production assembler.

19  AR 28–29.  The ALJ concluded that Plaintiff was not disabled.  AR 30.

20  **II.**

21  **ISSUES PRESENTED**

22       Issue One:  Whether the ALJ's RFC determination is supported by

23  substantial evidence?  (Dkt. 18, Joint Stipulation ["JS"] at 4.)  Generally, light work

24  "requires standing or walking for six hours in an eight-hour day."  Jenkins v.

25  Astrue, 628 F. Supp. 2d 1140, 1149 (C.D. Cal. 2009); see Social Security Ruling

26  (SSR) 83-10, at *6 ("the full range of light work requires standing or walking, off

27  and on, for a total of approximately 6 hours of an 8-hour workday").  Plaintiff

28

contends that his diabetic neuropathy causes foot pain that prevents him from meeting the standing/walking requirements of light work.  (JS at 5.)

Issue Two:  Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony?  (JS at 4.)  Plaintiff testified that when he stopped working in April 2015, he could walk only one or two blocks, and his condition worsened shortly after that to the point where he needed a walker to ambulate.  AR 74.  He used a walker at the administrative hearing.  AR 79–80.  The ALJ, however, found that Plaintiff could perform the walking/standing demands of light work and did not need an assistive device to ambulate.  AR 24, 26.

**III.**

**DISCUSSION**

**A.     ISSUE ONE: Plaintiff's Walking/Standing Abilities.**

**1.     Summary of the Medical Evidence.**

a.     January–July 2015 (Pre-Onset).

In January 2015, podiatrist Babak Alavynejad, D.P.M., discharged Plaintiff as "cured" after treating him for the "left ankle sprain" he suffered at work in August 2014.  AR 1128.  At that time, Plaintiff did not have a limp.  AR 1053, 1131.  His ankle joint had a full range of motion and 5/5 muscle strength.  AR 1131–32.  While noting that Plaintiff had diabetes, Dr. Alavynejad authorized Plaintiff to return to work with "no restrictions."  AR 1132.

In March 2015, Plaintiff underwent "normal" nerve conduction ("NCV") studies of his bilateral lower extremities with electromyography ("EMG") findings of "mild … polyneuropathy of the lower extremities consistent with diabetes."[2]  AR 311.  He had a nontender back, normal range of motion, and no observed

---

[2] NCV testing "measures how quickly the nerves in your arms and legs conduct electrical signals."  EMG testing "measures electrical discharges produced in your muscles."  See https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/diagnosis-treatment/drc-20371587 (last visited Dec. 9, 2020).

1   neurological deficits.  AR 369.  In April 2015, he reported "no foot/leg pain or

2   swelling."  AR 352.

3       At a workers' compensation evaluation by Lawrence A. Feiwell, M.D., in

4   May 2015, Plaintiff displayed an "antalgic limp on the ***right***" and refused to

5   perform heel or toe walking.  AR 1044 (emphasis added); see AR 1054 ("He has a

6   severe limp which is somewhat inconsistent because he is limping on the right

7   side. … These findings suggest symptom amplification.").  Plaintiff had "no

8   instability of the [left] ankle on physical examination."  AR 1052; see AR 1052–54

9   (discussing "inconsistencies" in Plaintiff's pain reporting).

10       In spring 2015, Plaintiff received physical therapy to address back and left

11   ankle pain.  AR 277.  In June 2015, he reported "significant" relief with therapy and

12   home exercise.  AR 283.  A June 2015 MRI of Plaintiff's left ankle revealed

13   "normal findings."  AR 288.

14            b.     August–December 2015 (Post-Onset).

15       In September 2015, Dr. Feiwell examined Plaintiff and found that his "left

16   ankle examination is normal other than some mild … tenderness; yet he continues

17   to ambulate with a limp."  AR 864.  From a functional standpoint, his left ankle had

18   normal motor strength and sensation.  AR 862.  Dr. Feiwell continued, "While the

19   patient does have a limp, I cannot explain his findings. … [T]here is certainly no

20   abnormalities of the ankle on MRI that would cause him to have a limp.  There is

21   no edema, tendon changes, ligament changes, loss of range of motion or any other

22   findings that would warrant an impairment."  AR 865.  He concluded that Plaintiff

23   could not lift more than 60 pounds and had "plateaued in response to conservative

24   treatment."  AR 865.

25       Later that month, a second MRI of Plaintiff's left ankle revealed some partial

26   ligament tears and tenosynovitis.  AR 294–95.  By October 2015, Plaintiff reported

27   "feeling OK & great except acid reflux."  AR 346.  He was "ambulatory" with "no

28

foot problem." AR 346.  He had a "routine medical examination," and he was not taking prescription pain medication.  AR 346–47.

### c. 2016.

In January 2016, Plaintiff enrolled in a diabetes management program, with an A1C level of 10.4.[3]  AR 316.  He reported he was "not able to exercise [due to] injuring his back in 8/2014," and he was "no longer walking" as part of his diabetes management.  AR 331.  His feet were neither swollen nor numb.  AR 326, 332.  He reported "no foot problem."  AR 335.  He received medication and counselling to help control his blood sugar, including a recommendation to walk 30 minutes at least five days per week.  AR 332.

In February 2016, Plaintiff underwent a podiatric evaluation in connection with his workers' compensation claim.  AR 448.  In this examination, he rated his left ankle pain as 8–9/10 and reported that he was "unable to ambulate" and used a cane.  AR 449, 451.  He walked with an observable limp, although his left ankle displayed only a mildly reduced range of motion.  AR 451.  He told the podiatrist that he had received "no further medical care for his left ankle" since aqua therapy in May 2015.  AR 457.

About two months later on April 11, 2016, Zaw Win Lwin, M.D., who was treating Plaintiff's diabetes, noted "normal" neurology and that Plaintiff was "ambulating well."  AR 1373.  Both feet had tactile sensation to light touch.  AR 1376.  Plaintiff reported no foot numbness, tingling, or burning.  AR 1378; see AR 1386 ("no foot problem").  Dr. Lwin noted neither a cane nor a limp.  AR 1379 (noting "NAD" [no abnormality detected] in general appearance and recommending

---

[3] "The A1C test is a common blood test used to diagnose type 1 and type 2 diabetes and to monitor how well you're managing your diabetes. … An A1C level above 8 percent means that your diabetes is not well-controlled and you have a higher risk of developing complications of diabetes." See https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643 (last visited Dec. 14, 2020).

that Plaintiff walk "30 minutes 5 days a week").  Later that month, Plaintiff "graduated" from the diabetes management program with an A1C level of 7.4, down from 10.4 in January 2016.  AR 1371, 1378.

In June 2016, orthopedist Anh Tat Hoang, M.D., completed a consultative examination.  AR 1312.  Dr. Hoang noted that Plaintiff had lived with diabetes for 8 to 10 years.  AR 1313.  Plaintiff used a cane during the examination, but he could ambulate without it and "had a normal gait without the use of cane."  AR 1313–14, 1316.  His "heel/toe walking indicated no muscular weakness" and he could "get on and off the examining table without difficulty."  AR 1314.  Plaintiff's right ankle and foot appeared normal, but he was wearing a left ankle brace.  AR 1315.  Nevertheless, his left ankle's range of motion "was full and was not painful."  AR 1315.  He had 5/5 motor strength and no atrophy.  AR 1315–16.  Dr. Hoang reviewed a radiographic study of Plaintiff's left ankle and interpreted it as an "essentially negative study."  AR 1316.  Dr. Hoang opined that Plaintiff could "stand and/or walk six hours in an eight-hour workday" and that an assistive device was "not medically necessary" for walking.  AR 1317.

In July 2016, state agency consultant G. Spinka, M.D. did not find that Plaintiff's diabetes was a severe impairment.  AR 100.  Dr. Spinka also opined that Plaintiff could stand or walk about six hours per day.  AR 101.

In December 2016, Plaintiff complained of "left ankle pain" but "no foot problem."  AR 1360.  His doctor noted, "He applied SSI and went to Evaluation Doctor.  He wanted me to extend EDD more (he got [$]400 every 2 weeks for last 6 months) on last visit."  AR 1360.  His diabetes was "w/o complication" although he had discontinued treatment at the diabetes clinic.  AR 1360.  He was using insulin, resulting in a fasting blood glucose ("FBG") level that was "well controlled."  AR 1360, 1366.  While his extremities and neurology were rated "normal," he was "ambulating with cane" and requesting an extension of his state disability.  AR 1360–62.  He was taking acetaminophen and aspirin.  AR 1360–61.

d.      2017.

In March 2017, Plaintiff had an A1C level of 9.5.  AR 1490.  Plaintiff also treated with podiatrist Tanya Panichpakdee, D.P.M., in March 2017.  AR 1413, 1540.  Plaintiff reported continuing left foot pain that he attributed to his 2014 ankle sprain.  AR 1413, 1540.  He also reported that an injection had helped with pain "for a couple months."  AR 1413, 1540.  In April 2017, he reported that "the last cortisone injection at the sinus tarsi did nothing."  AR 1539.  He was not taking any other pain medication.  AR 1436.  Dr. Panichpakdee advised Plaintiff regarding proper diabetic footcare, authorized an ankle brace, referred him to physical therapy, and recommended wider shoes.  AR 1414, 1541.  Thereafter, Dr. Panichpakdee sought authorization for diabetic shoes as Plaintiff "continues to wear inappropriate shoes which are squeezing on his various foot deformities and offer little support for his tendonitis pain."  AR 1539.  In July 2017, after completing ten physical therapy sessions, Plaintiff reported that his ***right*** leg and foot felt weaker.  AR 1538 (emphasis added).   In October 2017, Plaintiff reported feeling that both "his ankles will give out."  AR 1536.  Dr. Panichpakdee re-authorized an ankle brace, because Plaintiff "was not aware of his authorization for ankle brace in March, and the authorization expired."  AR 1536.

At an April 26, 2017 foot and ankle evaluation, Plaintiff told medical sources that he "experienced a fall at work landing hard on feet and twisting L ankle > R ankle.  Most pain has been in L but now R is worsening.  Pt also injured back and neck in fall."  AR 1473.  He presented using a cane on the right side.  AR 1473.  By June, Plaintiff had made some improvement with physical therapy, but his therapist noted "still quite weak B[oth] ankles."  AR 1477.  By September 2017, Plaintiff told his therapist he was worried that his "R foot will give way … such that he falls," and the therapist assessed, "Pain and R ankle instability continue."  AR 1482.

In July, August, and September 2017, neurologist Fidel Santa-Cruz, M.D., noted that Plaintiff "walks with a cane due to *right* ankle pain/weakness" and "weakness *right* ankle." AR 1416, 1418 (emphasis added); cf. AR 1420 (stating "worse on the left than on the right" and "walks with a cane due to right ankle weakness"). Dr. Santa-Cruz conducted new EMG and NCV studies of Plaintiff's lower extremities. AR 1431. This time, the EMG results were "normal" while the NCV results were "abnormal … compatible with a peripheral neuropathy" of undescribed severity. AR 1431. Plaintiff did not report taking prescription pain medicine. AR 1416, 1420.

In August 2017, Plaintiff saw Gerald Y. Ho, M.D., complaining of 7/10 back pain radiating to his legs since his 2014 fall at work. AR 1574–75. He reported previously treating his pain with Tylenol and achieving "some pain relief." AR 1574. Dr. Ho noted several locations of musculoskeletal pain, but neither ankle nor foot pain. AR 1574. Dr. Ho also noted some tenderness, but "no swelling of the ankles" and "ankle motion was normal." AR 1576. Plaintiff, however, displayed an "abnormal" gait and stance. AR 1576. Dr. Ho prescribed Tylenol and Gabapentin. AR 1576. By October, Plaintiff was "off Gabapentin" but Advil was "helping," and he was prescribed Flexeril for "myofascial," i.e., muscle pain. AR 1570. In December, he reported that both Advil and Flexeril were "helpful," but Dr. Ho also started Lyrica. AR 1564. Plaintiff reported "numbness" of his left foot and back pain. AR 1439. He had "normal" ankle and foot motion, but he used a cane to ambulate. AR 1441.

Also, in December 2017, Plaintiff started physical therapy for "low back pain due to a fall in 2014." AR 1447. He told the therapist that he had "severe difficulty walking," but the therapist's notes do not mention foot pain. AR 1447. Plaintiff reported "decreased pain following treatment." AR 1449–52. On December 20, 2017, Dr. Panichpakdee noted Plaintiff should "[continue] with Lyrica [to] see if it

8

1  improves feet pain [bilaterally]" and continue to wear ankle "braces daily." AR

2  1535. Plaintiff testified that in December 2017, he started using a walker. AR 72.

3                  e.     2018.

4        In January 2018, Plaintiff continued to receive physical therapy for lower

5  back pain. AR 1457. His therapist noted that he reported "intermittent numbness

6  and tingling in his [bilateral lower extremities, left greater than right]." AR 1457.

7  Plaintiff had made "steady progress" over eight visits and met 75 percent of his

8  short-term goals. AR 1457. By the end of 17 visits, he reported only "mod/severe

9  difficulty walking." AR 1468.

10        Plaintiff also continued to see Dr. Ho in January 2018. AR 1558. Plaintiff

11  reported that Lyrica was "helping" but caused "some somnolence." AR 1558.

12  Plaintiff continued to attend physical therapy for back pain, but he reported little

13  improvement. AR 1558. Dr. Ho increased his Lyrica dosage in March 2018,

14  attempting to address "radicular pain." AR 1553. By June 2018, Plaintiff's ankles

15  still had "normal" motion. AR 1546. Dr. Ho referred him to specialized pain

16  management to address his back pain. AR 1547.

17        In March 2018, Plaintiff had an initial consultation with Ajay Patel, M.D.

18  AR 1522. Plaintiff reported back and neck pain radiating to both lower extremities

19  beginning 4–6 years ago. AR 1522. Medication had been partially helpful at

20  relieving his pain. AR 1522. Both lower extremities had reduced motor strength

21  that Dr. Patel still characterized as "grossly normal," but Plaintiff's gait was

22  antalgic. AR 1524. Dr. Patel recorded 15 different assessments, none of which

23  were left ankle/foot pain or diabetic neuropathy. AR 1524. He prescribed Tylenol

24  with codeine. AR 1525. Plaintiff had follow-up appointments with Dr. Patel with

25  similar findings and treatment. AR 1517 (April 2018), 1512 (May 2018), 1507

26  (June 2018 [despite treatment with Lyrica, NSAIDs, and Flexeril, Plaintiff reported

27  his back and neck pain increased from 6/10 to 7/10 and radiated to both lower

28  extremities]).

Plaintiff also continued to treat with Dr. Panichpakdee.  AR 1531–34.  In July 2018, Plaintiff complained of "burning, tingling" feeling in his feet, causing him to scratch them.  AR 1531.  Dr. Panichpakdee advised that his "diabetic neuropathy will not improve with scratching his feet but with tighter blood sugar control."  AR 1531.

### 2.    The ALJ's Evaluation of the Medical Evidence.

The ALJ gave "little weight" to Dr. Hoang's opinion that Plaintiff could do medium work, noting that Dr. Hoang reviewed few records and finding that the medical evidence was more consistent with an RFC for light work.  AR 27.  While medium work requires lifting more weight than light work, both require walking or standing about six hours per day.  SSR 83-10.

The ALJ gave "partial weight" to Dr. Spinka's opinion that Plaintiff had a "reduced medium" RFC.  AR 27.  Again, the ALJ determined that a "reduced light" RFC was "more appropriate."  AR 27.

The ALJ gave "some weight" to Dr. Alavynejad's January 2015 opinion that Plaintiff's left ankle sprain had been cured, such that Plaintiff could return to work with no restrictions.  AR 28.  The ALJ found that work restrictions consistent with a light RFC were more appropriate to give some "benefit of the doubt" to Plaintiff's subjective complaints of continuing foot and ankle pain.  AR 28.

The ALJ also gave "some weight" to Dr. Feiwell's September 2015 return-to-work restrictions, i.e., a restriction against lifting more than 60 pounds with no limitations on standing or walking.  AR 28, citing AR 865.  Dr. Feiwell expressly found that Plaintiff's left ankle injury merited no work restrictions.  AR 865.

### 3.    Analysis of Claimed Errors.

First, Plaintiff argues that the ALJ understated the limiting effects of pain caused by his diabetic neuropathy by ignoring the EMG and NVC studies.  (JS at 7, citing AR 311 and 1430.)  While these studies support Plaintiff's diagnosis of diabetic neuropathy, and diabetic neuropathy can cause pain, the diagnostic tests do

not indicate that Plaintiff's neuropathy caused pain so severe that it significantly limited his ability to walk or stand.  The March 2015 EMG study was interpreted as showing "mild" polyneuropathy, whereas the August 2017 EMG results were "normal."  AR 311, 1431.  The March 2015 NCV results were "normal," whereas the August 2017 results were "abnormal … compatible with a peripheral neuropathy."  AR 311, 1431.  Indeed, in 2017, Plaintiff had the same "abnormal" NCV results for his *upper* extremities, AR 1430, although he did not report hand pain, let along severe hand pain causing functional impairments.  At the hearing, Plaintiff's counsel acknowledged that "EMGs are not necessarily indicative of the degree" of functional impairment, if any.  AR 90.

Second, Plaintiff argues that the ALJ gave too much weight to the 2016 opinions of Drs. Hoang and Spinka without considering that Plaintiff's treating records from 2017 and 2018 showed worsening foot pain.  (JS at 7–8.)  The ALJ, however, discussed treating records from Drs. Patel, Panichpakdee, and Ho.  AR 25–27.  Substantial evidence supports the ALJ's conclusion that these records do not establish that Plaintiff's diabetic neuropathy caused pain so severe that it prevented him from walking or standing for six hours per day.  While each of these doctors observed some level of impairment, such as minor loss of motor strength, AR 1504, 1509, 1514, 1519, 1524, 1531, 1534, 1535, 1538, 1546, 1552, 1558, they also made many "normal" findings about Plaintiff's lower extremities, AR 1504, 1509, 1514, 1519, 1524, 1540, 1546, 1552, 1558.  While these doctors observed that Plaintiff came to his appointments with a cane, they did not opine that a cane was medically necessary.  AR 1441, 1505, 1534, 1537, 1539, 1541, 1546–47, 1552–53, 1558–59.

Third, Plaintiff argues that the ALJ erred by giving any weight to Dr. Alavynejad's failure to assess restrictions on walking/standing in January 2015, because that opinion pre-dated his alleged disability onset and "was only based on [Plaintiff's] left ankle sprain, not diabetic neuropathy."  (JS at 8–9.)  In 2017 and

2018, however, Plaintiff continued to attribute his foot and ankle pain to his 2014 fall.  AR 1439, 1447, 1473, 1502, 1574–75.  The ALJ justifiably considered that the doctors who treated his 2014 left ankle injury did not find that injury restricted Plaintiff's walking or standing abilities in 2015 and 2016, even though he had already started to use a cane.  AR 25–26.  Moreover, Dr. Alavynejad was aware that Plaintiff had diabetes.  AR 1128.  It is reasonable to think that in considering whether Plaintiff's ankle sprain had caused a disability, Dr. Alavynejad would have noted any significant limitations on Plaintiff's ability to walk or stand caused by some other medical condition, such as diabetic neuropathy, if Dr. Alavynejad had observed any.  Instead, in January 2015, Dr. Alavynejad observed a full range of ankle motion and 5/5 muscle strength (AR 1131–32), "no limp" (AR 1131), and "patient reports improvement with the left ankle.  Occasionally, he may feel some soreness."  AR 1128.

Fourth, Plaintiff argues that the ALJ misconstrued Dr. Feiwell's report as "questioning" Plaintiff's claimed difficulty ambulating.  (JS at 9.)  Plaintiff argues that Dr. Feiwell never considered Plaintiff's neuropathy.  (Id.)  Again, Dr. Feiwell knew Plaintiff's medical history, including diabetes.  AR 1036–42 (reviewing prior records and noting current medications included metformin).  Dr. Feiwell nevertheless opined that he saw no reason why Plaintiff would be limping.  AR 1052–54.  The ALJ did not err in using Dr. Feiwell's well-explained opinions to discount the reliability of Plaintiff's symptom reporting and, consequently, to conclude that Plaintiff's walking and standing abilities were greater than he alleged.

Finally, Plaintiff suggests that since the ALJ "rejected" the opinions of Drs. Hoang and Spinka that Plaintiff could perform "medium" work, there is no substantial evidence left to support any RFC determination.  (JS at 9–10.)  While the ALJ rejected these doctors' opinions of Plaintiff's *lifting* abilities, the ALJ adopted their opinions of Plaintiff's *walking/standing* abilities.  Compare AR 24, with AR 101, 1317.  There are no medical opinions that Plaintiff could not walk or

stand for six hours per day.  The ALJ's RFC determination, therefore, is supported by substantial evidence.

**B.    ISSUE TWO: Plaintiff's Testimony.**

    **1.    Summary of Plaintiff's Testimony.**

Plaintiff testified that in 2014, he fell at work and his "[left] foot started hurting."  AR 72.  He used a cane to walk after that accident even though he continued to work at Pep Boys.  AR 73.  He described his pain while still working as back pain that "would travel all the way down to my ankles and to my feet."  AR 73–74.  In April 2015, if he walked one or two blocks then he "couldn't [walk] anymore, because [his] feet were hurting too much."  AR 74.  His condition got worse after he stopped working, and he started to use a walker in December 2017.  AR 72, 74.  He recalled taking Tylenol with codeine to treat his pain for "around three months," and before that, he took Advil.  AR 84.

Plaintiff testified that he could lift a coffee cup but not a gallon of water due to arm and back pain.  AR 75.  When questioned further about lifting, he testified that he had not lifted as much as a gallon of water since he stopped working.  AR 79.  He had, however, folded and lifted his walker to put it in the car to drive to the hearing.  AR 79.  The ALJ estimated that the walker weighed between five and ten pounds, noting that it was a "nice walker" with a "large seat" and a "storage area."  AR 80.  Plaintiff was able to drive, go grocery shopping, and attend church.  AR 77, 83.

    **2.    The ALJ's Evaluation of Plaintiff's Testimony.**

The ALJ evaluated Plaintiff's subjective symptom testimony consistent with 20 C.F.R. § 1529 and SSR 16-3p.  AR 24.  After reciting the two-step process, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 25.  The ALJ then considered Plaintiff's alleged back pain, diabetic

13

neuropathy, left ankle sprain, and left shoulder impingement.  AR 25–27.  As to

each of these conditions, the ALJ found that "the objective evidence does not

support [Plaintiff's] allegations of severity."  AR 28.  In support of this finding, the

ALJ discussed Plaintiff's physical examinations and imaging studies which

generally showed only mild impairments.  AR 25–26.  Regarding Plaintiff's

diabetic neuropathy and left ankle/foot pain—the subject of this appeal—the ALJ

cited as additional reasons that Plaintiff had undergone only conservative treatment

and Plaintiff's diabetes was (or could be) controlled with medication.  AR 26.

Finally, the ALJ directly rejected Plaintiff's testimony that he had needed an

assistive device—either a cane or a walker—to ambulate ever since his left ankle

sprain in August 2014.  AR 26.  The ALJ cited the recommendation of Dr.

Alavynejad in January 2015 that Plaintiff could return to work without any

restrictions on walking or standing and Dr. Feiwell's observations in September

2015 that it was "peculiar" that Plaintiff was walking with a limp "despite only

slight or mild clinical findings."  AR 26, citing AR 864–65 and 1132.

### 3.    Malingering.

In the context of adjudicating claims for social security disability benefits,

"Malingering means fabricating or exaggerating symptoms of any mental or

physical disorders for personal gain."  Webber v. Berryhill, No. 2:15-CV-00295,

2017 U.S. Dist. LEXIS 25705, at *17 n.6, 2017 WL 722593, at *6 n.6 (E.D. Wash.

Feb. 23, 2017).  If the ALJ cites affirmative evidence showing that the claimant is

malingering, then the Commissioner's reasons for rejecting the claimant's

testimony need not be supported by clear and convincing reasons.  Lester v. Chater,

81 F.3d 821, 834 (9th Cir. 1995); accord Laborin v. Berryhill, 867 F.3d 1151, 1155

(9th Cir. 2017) (unless there is "evidence of malingering, the ALJ must give

specific, clear, and convincing reasons for rejecting the [claimant's] testimony")

(citation omitted); Brabbin v. Astrue, No. SACV 10-386 OP, 2011 U.S. Dist.

LEXIS 16693, at *23, 2011 WL 672603, at *7 (C.D. Cal. Feb. 16, 2011)

("Affirmative evidence suggesting that a claimant is malingering vitiates the applicability of a clear and convincing standard of review.") (citations omitted). Indeed, "[e]vidence of malingering is … sufficient to support a negative credibility finding." Mohammad v. Colvin, 595 F. App'x 696, 697 (9th Cir. 2014); see Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040–41 (9th Cir. 2003) (finding that evidence of malingering is sufficient to reject subjective symptom statements). For example, in Harral v. Astrue, the district court upheld an ALJ's decision to discount the claimant's subjective testimony based on affirmative evidence of malingering. The ALJ cited one treating doctor's note that despite no significant clinical findings, the claimant had not returned to work in two years and had a "pretty generous disability policy." No. 2:09-cv-02814, 2011 U.S. Dist. LEXIS 35486, at *34–35, 2011 WL 1253249, at *10 (E.D. Cal. Mar. 31, 2011); see also Brabbin, 2011 U.S. Dist. LEXIS 16693, at *23, 2011 WL 672603, at *7 (holding claimant's testimony could be discounted for malingering where ALJ cited examiner's conclusion of suboptimal effort on psychological tests).

Here, Plaintiff argues that the ALJ "did not cite any affirmative evidence of malingering." (JS at 16.) Plaintiff misreads the ALJ's decision. The ALJ expressly found that Plaintiff was exaggerating his difficulty walking by claiming to need an assistive device—either a cane or walker—to ambulate ever since his August 2014 industrial accident (see testimony at AR 72–73) when, in fact, he did not need an assistive device to ambulate since at least January 2015. AR 26. The ALJ cited substantial evidence to support this finding, including (1) Dr. Alavynejad's January 2015 opinion that Plaintiff could return to work "with no restrictions" (AR 1132), (2) Dr. Hoang's June 2016 opinion that Plaintiff could walk without a cane with no discernable limp (AR 1313–14), and (3) Dr. Feiwell's notes that he could not explain Plaintiff's limp (AR 864–65). AR 26.

Plaintiff argues that Dr. Feiwell's September 2015 observations can be explained away by recognizing that as a medical examiner for Plaintiff's worker's

compensation claim, he would not have considered whether diabetic neuropathy might be causing Plaintiff's limp, because "[d]iabetic neuropathy is not an industrially related injury." (JS at 9.)  The record, however, does not support this argument.  In January 2015, Dr. Alavynejad observed "no limp" and pronounced Plaintiff's left ankle injury "cured."  AR 1128, 1131.  While Plaintiff had suffered from diabetes for many years, Plaintiff was diagnosed with diabetic neuropathy in March 2015 based on "mild" EMG testing abnormalities.  AR 311.  Despite this diagnosis, in April 2015, he reported "no foot/leg pain or swelling."  AR 352.  Just a month later in May 2015, however, Plaintiff displayed a "severe limp"—on the *right* side—which Dr. Feiwell expressly noted was "inconsistent" with his earlier treatment for a *left* ankle sprain.  AR 1054.  When Dr. Feiwell re-examined Plaintiff in September 2015, Plaintiff had an "antalgic gait on the *left*" despite "normal" neurologic sensation in both feet.  AR 856, 860, 864 (emphasis added).  Thus, the peculiarities noted by Dr. Feiwell and cited by the ALJ concern Plaintiff's limp *switching sides*.  Plaintiff's diabetic neuropathy diagnosis does not explain away Dr. Feiwell's findings of malingering.  Indeed, at the same time when Dr. Feiwell observed Plaintiff limping on the right, then the left, purportedly due to foot pain from diabetic neuropathy, Plaintiff told other medical sources in October 2015 and January 2016 that he had "no foot problem."  AR 335, 346–47; see also AR 1351–52 (reporting back and neck pain but no foot pain in October 2015), 1353–54 (same provider in December 2015 noting "antalgic gait—uses cane to ambulate" due to "[left] ankle pain" from August 2014 injury).  Even after Dr. Panichpakdee explained that wider shoes would help alleviate his foot pain, Plaintiff continued to wear "narrow dress shoes."  AR 1539.

    Dr. Feiwell was not the only medical source whose notes show inconsistent symptom reporting by Plaintiff.  In June 2016, Plaintiff brought a cane to his consultative examination; he complained of *left* ankle pain and wore a *left* ankle brace.  AR 1312, 1315.  As the ALJ noted, however, Dr. Hoang observed that

Plaintiff could walk without a cane with no discernable limp on either side.  AR 26, citing AR 1313–14.  This is consistent with Dr. Lwin observing that Plaintiff was "ambulating well" with no assistive device in April 2016.  AR 1371.  Then in 2017, Dr. Santa-Cruz observed that Plaintiff walked "with a cane due to *right* ankle pain/weakness" and had "weakness *right* ankle."  AR 1416, 1418 (emphasis added).  This matches Plaintiff's new complaints to his physical therapist about *right* ankle pain and instability.  AR 1482.

Records from physical therapy in 2017 and 2018 do not mention Plaintiff using a cane or a walker.  AR 1447–68.  Similarly, records from a podiatry appointment in July 2018 do not mention Plaintiff using a cane or a walker.  AR 1531.  The podiatrist addressed his "painful toenails," observed that he had 4/5 muscle strength in all muscle groups, and recommended Capsaicin cream for the "burning, tingling feeling" in his feet caused by diabetic neuropathy.  AR 1531. This is a far cry from the examination notes that one would expect if Plaintiff's diabetic neuropathy were causing foot pain so severe that he could only ambulate with a walker.

In sum, at various times different medical sources observed Plaintiff limping on different legs or not limping at all.  Some noted that he could ambulate well with no cane, contradicting his testimony that he has needed a cane or walker to ambulate ever since spraining his ankle in August 2014.  No medical source ever noted observing Plaintiff using a walker, but he brought a walker to his 2018 administrative hearing.  The ALJ cited medical records that support the ALJ's finding of malingering, and this alone suffices to uphold the ALJ's decision to discount Plaintiff's subjective symptom testimony.

### 4. Clear and Convincing Reasons.

Even if the Court performed an alternative analysis of the ALJ's other reasons for discounting Plaintiff's testimony about the functional limitations caused by his foot pain, the Court would find no error.  As noted above, the ALJ

17

disbelieved Plaintiff's testimony that he was unable to perform the walking and standing requirements of light work both because (1) the severity of his alleged limitations lacked objective evidentiary support, and (2) Plaintiff had received conservative treatment for pain and diabetes which had improved his symptoms. AR 26.

The ALJ explained the lack of objective evidence supporting a claim of disabling foot pain due either to Plaintiff's 2014 ankle sprain, diabetic neuropathy, or degenerative disc disease, discussing Plaintiff's physical examinations and imaging studies.  AR 25–26.  Plaintiff counters that he "is particularly focused on his diabetic neuropathy" and argues that the ALJ's "analysis of the objective and clinical examination findings is deficient," referring to pages 5–9 of the Joint Stipulation.  (JS at 16.)  In those pages, Plaintiff argues that his treating records show that diabetic neuropathy caused "left foot pain" and "decreased sensation and loss in motor strength."  (JS at 5, citing AR 1413.)  He also argues that his diabetic neuropathy caused "severe pain on palpation."  (JS at 7, citing AR 451, 461, and 671.)  He lists numerous medical sources who observed an abnormal gait.  (JS at 7–8, citing records from Drs. Santa-Cruz, Ho, Patel, and Panichpakdee.)

First, while numerous doctors observed Plaintiff using a cane and limping, those observations provide no "objective" support for Plaintiff's testimony if—as the ALJ found—Plaintiff was using a cane when he did not need to and limped on different legs at different times.  Second, the cited record at AR 1413 is a March 2017 progress note from Dr. Panichpakdee.  At that appointment, Plaintiff presented "with left foot pain.  He states he had a workplace injury where he fell from 5 feet up and landed on the side of the left foot."  AR 1413.  He also complained of "numbness in the left foot when he wears closed toed shoes."  AR 1413.  Dr. Panichpakdee observed that his left-side muscle strength was reduced, but only to 4/5 rather than 5/5.  AR 1413.  She counselled him on diabetic footcare and concluded "his shoes are probably too tight causing neuropraxia when it

compresses on the boney prominences of his foot." AR 1414. She gave him "recommendations on where he can purchase very wide sneakers." AR 1414. Nevertheless, he continued to wear "narrow dress shoes." AR 1539. The cited record does not show that Plaintiff's diabetic neuropathy was causing foot pain so severe that it prevented him from walking more than one or two blocks or ambulating without a walker.

Finally, the cited records at AR 451, 461, and 671 come from podiatric evaluations conducted in connection with Plaintiff's workers' compensation claim on February 1, February 16, and March 8, 2016. In the initial evaluation, Plaintiff told Allen Massihi, D.P.M., that while working, he "fell four to five feet to the ground" and experienced "immediately pain and swelling in his left ankle." AR 457. He underwent physical therapy and aqua therapy but reported persistent left ankle pain. AR 457. He was not taking any prescription pain medication. AR 459. Examination of his left lower extremity revealed normal motor function, AR 449, 460, 670, and some "moderately hypersensitive" sensory function, but no decreased sensitivity or numbness, AR 450, 460, 670–71. Plaintiff initially reported "severe pain with palpation of the left calcaneofibular and anterior fibular ligament," AR 450, 461, consistent with an ankle sprain, not neuropathic foot pain, AR 452, 462 (diagnosing Plaintiff with "status post ankle sprain, left"). Somewhat inconsistently, Dr. Massihi also observed, "Pain is not elicited with palpation of the joints and ligaments in both feet and ankles. Medial or lateral instability of the ankle was not present." AR 451, 461. Dr. Massihi recommended that Plaintiff "get his blood sugar under control" before receiving a cortisone injection to treat his ankle pain. AR 462.

At the second evaluation, Dr. Massihi noted that Plaintiff was "post injury to left ankle" and "unable to ambulate," but the cause was not diabetic neuropathy. AR 449. Rather, Plaintiff reported that his diabetes was "under control." AR 449. Dr. Massihi opined that Plaintiff's ankle pain was the result of his fall at work and

19

administered an injection to treat that pain.  AR 453, 463 ("injuries and resultant conditions as related to the left foot and ankle are industrial in causation").  At the March 2016 evaluation, Plaintiff reported decreased ankle pain in response to the injection, and Dr. Massihi observed decreased pain on palpation.  AR 670–71.  In fact, Plaintiff had full motor function and a normal range of ankle motion in each of six categories tested.  AR 670–71.  Again, these records do not undercut the ALJ's conclusion that Plaintiff's treating records do not provide objective evidence that foot pain caused by diabetic neuropathy significantly limited his ability to walk or stand.

Regarding conservative treatment, the ALJ noted that Plaintiff was receiving treatment such as "medication, diet, exercise and diabetic shoes," and the severity of his diabetes and resulting neuropathy had been or could be controlled through such treatment.  AR 26.  The ALJ found that Plaintiff had also received "mostly conservative" treatment for foot and ankle pain consisting of sporadic pain medication and physical therapy.  AR 26.  The ALJ further noted that Plaintiff's diabetes had not progressed to the point of causing other functional impairments.  AR 26.

Plaintiff first argues that he cannot be faulted for receiving only conservative treatment because there is no more aggressive treatment, like surgery, available to address diabetic neuropathy.  (JS at 6.)  Plaintiff's functional limitations, however, are allegedly caused by *foot pain* arising from diabetic neuropathy, and there are non-conservative ways to treat pain.  For much of Plaintiff's claimed period of disability, he was not receiving prescription-strength pain medication.  AR 332, 346–47, 457–59, 1036, 1360–61, 1436.  Moreover, Plaintiff continued to link his foot and ankle pain to his 2014 fall even in 2017 and 2018.  AR 1439, 1447, 1473, 1502, 1574–75.  The ALJ could fairly consider that no doctor had recommended non-conservative treatment to address his ankle sprain.  To the contrary, medical sources who reviewed MRIs and treated Plaintiff after his fall saw no evidence of

1   any lingering orthopedic injury.  AR 1052–54, 1128, 1379.

2   Next, Plaintiff argues that the ALJ erred in finding that his diabetes was
3   adequately controlled through conservative measures like diet, exercise, and
4   medication.  (JS at 5.)  Plaintiff, however, repeatedly told medical sources that his
5   diabetes was controlled.  AR 449, 1360, 1366.  The ALJ could consider whether his
6   diabetes might have been even better controlled (with resulting improvement in his
7   neuropathy and foot pain) if he had followed recommendations to change his shoes,
8   diet, and exercise habits.  Plaintiff was counseled to change his diet in 2016, AR
9   316, 1369, but his weight in 2016 was similar or slightly more in 2018.  Compare
10   AR 332 (94 kg [about 207 pounds] in January 2016), with AR 1557 (213 pounds in
11   January 2018).  He was also counselled to wear wider shoes, but he did not.  AR
12   1414, 1539.

13   Lastly, Plaintiff argues that it is irrelevant that his diabetes did not cause
14   nephropathy or retinopathy since he is not seeking disability benefits as a result of
15   those impairments.  (JS at 6.)  The ALJ's point, however, was that if Plaintiff's
16   diabetes was not so uncontrolled as to cause those kinds of problems, then it was
17   less likely to have caused neuropathic pain so severe that it prevented Plaintiff from
18   ambulating without a walker.

19   For all these reasons, Plaintiff has failed to demonstrate legal error in the
20   ALJ's evaluation of his subjective symptom testimony.

21   **IV.**

22   **CONCLUSION**

23   For the reasons stated above, IT IS ORDERED that judgment shall be
24   entered AFFIRMING the decision of the Commissioner.

25

26   DATED:  December 17, 2020                    _Karen E. Scott_

27   _____
     KAREN E. SCOTT

28                                              United States Magistrate Judge

21